IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 22, 2018

**JAMES RICH v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Campbell County
No. 16033     E. Shayne Sexton, Judge**

_____

**No. E2017-00759-CCA-R3-PC**

_____

Petitioner, James Rich, appeals the denial of his post-conviction petition.  Petitioner argues that his guilty plea was unknowingly and involuntarily entered due to ineffective assistance of counsel.  Following a review of the briefs of the parties and the entire record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Miles Brinson, Knoxville, Tennessee, for the appellant, James Rich.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Jared Ralph Effler, District Attorney General; and Thomas E. Barclay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Background*

Petitioner was indicted on five counts of rape of a child, two counts of rape, four counts of aggravated sexual battery, and four counts of incest.  He entered a nolo contendere plea to two counts of aggravated sexual battery with an agreed sentence of twelve years in confinement.  Thereafter, Petitioner filed this timely petition for post-conviction relief.

*Guilty Plea Submission Hearing*

It is the policy of this court to refer to minors, as well as all victims of sexual offenses by their initials. We will additionally not refer to the mother of one of the victims by her name in furtherance of our efforts to protect that victim's identity. The facts of the case as presented by the State at the guilty plea submission hearing are as follows:

> Your Honor, if the State of Tennessee were called to trial in this case, number 16.033, State of Tennessee versus James Mitchell Rich, we would call the witness – some witnesses listed on the indictment. Particularly, we would call detective Josh Hill with the LaFollette Police Department, Kelly French with the Department of Children's Services, Bobbie Daniels with the Child Advocacy Center, Gail Clift with the Child Advocacy Center, [L.B.], [C.R.] and [L.B's mother].
>
> Specifically as to count eight, there would be three witnesses to prove that count. The first witness would be [L.B.] that would state that on or about February of 2008 through August of 2012, at a time when she was between the ages of 11 - - seven and 11 years old, that [Petitioner], did unlawfully, feloniously, intentionally and knowingly engage in sexual contact with her in Campbell County. She would give specific details of that crime as detailed in Exhibit 1 to be entered as part of this stipulation, which the Court should have a copy of that, I think attached, which is a forensic interview that was given to Bobbie Daniels at the Campbell County Children's Center.
>
> \*　　\*　　\*
>
> She would further testify that she was a witness to the sexual assault crime against [C.R.], the victim listed in count ten.
>
> As to count eight, we would further call [L.B's mother] who would testify that she was the mother of [L.B.] and - - that that her daughter reported the abuse to her, and further, that she had observed [L.B.'s] underwear as [L.B.] reported and would have testified to.
>
> We would also call a third witness, Gail Clift, a sexual assault nurse practitioner, that would testify that she completed a medical exam of [L.B.] and that her findings were consistent with [L.B.'s] disclosure of the abuse. She would further testify to specific statements and facts as included in her report which would be filed as Exhibit 2 to this stipulation. The Court should have that as well.

\*     \*     \*

As to count ten, the State would call [C.R.] who would testify that between December of 2003 through August of 2012, when she was between the ages of five and 13 years of age, that [    ], [Petitioner], engaged in sexual contact with her in Campbell County. She would give specific details of that crime as detailed in Exhibit 2 which is a forensic interview given to Bobbie Daniels at the Campbell County Children's Center, and that that forensic interview would be entered as part of this stipulation.

\*     \*     \*

[C.R.] would further testify that she was a witness to the sexual assault of [L.B.], the victim in count eight. And all of this would have occurred in Campbell County, Tennessee, and each of the child victims would testify to that.

Petitioner told the trial court that he did not contest the State's recitation of facts as evidence in his case. Trial counsel also agreed that the State's version of facts was consistent with his investigation.

*Post-Conviction Hearing*

Petitioner testified that he was facing multiple charges and that trial counsel informed him that "we could go to trial and we would face life in prison if convicted or we could cop out to the deal that the prosecutor was offering - - offering us at the time, and he said they, you know, that we'd take a 12, . . . , but we'd probably only do about seven in prison on it." Petitioner testified that he plead no contest to two counts of aggravated sexual battery because trial counsel told him that he would likely be convicted if the case went to trial by the State just calling two witnesses, one from the Department of Children's Services [DCS] and the forensic investigator. Petitioner also testified that trial counsel told him that "he'd had cases where he had all the medical evidence in the world that proved things that, . . . , and he said that when a witness gets on the stand and cries for three says, he said the jury usually goes with 'em.'"

When asked what trial counsel told him about the rape shield law, Petitioner testified:

He said that under the rape shield law that even though we had testimony and testimony where there - - other people had been accused by the - - by the victims and it was proved faulty and even though they described this

- 3 -

and that, I - - it was a long time ago, but for the majority of it, I seriously remember that he said that a lot of times that under Rule 4.02 or 4.12 or something like that, that things would not be permiss - - permissible.

Petitioner testified that he and trial counsel never really discussed trial and never prepared for trial. He said that trial counsel never interviewed "the witnesses as far as [he] was concerned," and that trial counsel was "just waiting on the next plea deal." Petitioner said that he and trial counsel did not discuss calling the victims as witnesses.

Petitioner testified that trial counsel received discovery from the State, and he and trial counsel reviewed a one-thousand page report in twenty minutes. He said that the report contained several DCS reports and medical reports. Petitioner could not recall how many times he met with trial counsel, but he estimated that it was less than ten times. He said that their meetings usually lasted fifteen to twenty minutes. Petitioner testified that he and trial counsel reviewed forensic medical paperwork one time.

On cross-examination, Petitioner testified that trial counsel told him that a crime for aggravated sexual battery could be proven without testimony by the victims. Petitioner testified that he missed one appointment with trial counsel and denied that he failed to show up for most of the appointments. He said that the trial court put down an order directing him to go to trial counsel's office after he missed the one meeting. Petitioner denied missing a meeting for his mental health evaluation. Although Petitioner had a history of mental illness, he was found competent to stand trial and sane at the time of the offenses.

Petitioner testified that trial counsel forced him to plead guilty because trial counsel told him that he had no defense. Therefore, he felt that trial counsel was not willing to represent him. He never asked the trial court for new counsel. Petitioner could not say how the guilty plea violated his constitutional rights.

Geraldine Rich, Petitioner's mother, testified that she and Petitioner met with trial counsel five or six times for approximately thirty minutes each time. She said that they discussed "[j]ust the basic things, like what the charges that had been brought up against him and how he felt it - - what he wanted - - what [Petitioner] wanted to do and everything." Ms. Rich testified that trial counsel "didn't really go over anything" and "just showed us the paperwork and what the paperwork and everything said." The paperwork consisted of "what DCS had spoken to the children about the forensic exams and stuff, and the kids' statements." Ms. Rich testified that trial counsel said that there were some tapes but he never showed anything to them, and trial counsel did not review the records of any interviews with the victims.

Ms. Rich testified that trial counsel told Petitioner to take the "plea deal because he told him he would get more time if he didn't." Trial counsel did not say why he

- 4 -

thought that he would be unsuccessful at trial. Ms. Rich testified that Petitioner informed trial counsel that Matthew Kempher, one of the victim's half-brother, may have been the perpetrator.

Trial counsel testified that he was appointed to represent Petitioner. He said that discovery in Petitioner's case was voluminous and consisted of "a number of paperwork and also a number of CDs that was forensic interviews with the alleged victims." Trial counsel testified that the CDs contained an interview with two girls by DCS and "there was also the written statements from the DCS workers concerning the forensic evaluations and the allegations that the girls had disclosed to them." He was also aware of some juvenile court proceedings.

Trial counsel thought that he and Petitioner reviewed the CDs at trial counsel's office. He further testified:

> Well, we talked about the allegations the girls had made and if there was some kind of an excuse or a reason he could give me for the girls making these allegations. It was not just one girl, they [sic] was two victims and they both co - - corroborated each other's testimony and the only issue I - - the only reason or excuse he could ever give me was, I made them clean their rooms.

Trial counsel testified that he did not seek to depose the victims because Petitioner entered a plea. He said: "If we had set the case for trial and had a trial, then I would have probably done that in pretrial discovery or pretrial preparation." Trial counsel testified that Petitioner did not mention Matthew Kemper or any other alleged perpetrator to him.

On cross-examination, trial counsel testified that the State originally made a plea offer of thirty-six or thirty years, and the final offer was for twelve years. Concerning the plea agreement, trial counsel testified:

> When I was practicing this law in this field in Campbell County, Union County, Claiborne County, and Scott County, I [did] approximately 300 cases a year, mostly criminal cases, and I think [Petitioner's] deal was a very good deal for the seriousness of the allegations and the two witnesses who corroborated each other's testimony. I thought it was a great deal.

Trial counsel agreed that Petitioner was originally charged with five counts of rape of a child, two counts of rape, four counts of aggravated sexual battery, and four counts of incest. He and Petitioner discussed that Petitioner would enter a guilty plea to aggravated sexual battery which did not require proof of penetration. Trial counsel

agreed that a report which indicated that there was no evidence of penetration to the victim would have been of no consequence to a plea to aggravated sexual battery. Trial counsel also agreed that a medical report indicating that the victim's hymen was intact did not necessarily mean that there was no penetration. He said: "I've also tried prior rape cases in the same situation where I've had experts come in and testify that just because the hymen is [ ] intact does not mean there wasn't rape." Trial counsel testified that he and Petitioner also discussed the issue.

Trial counsel agreed that he told Petitioner that if convicted of rape of a child he faced a minimum sentence of twenty-five years. He said: "Because under the sentencing guidelines rape of a child cannot be sentenced as a range one. It's a mandatory minimum range two sentence. Regardless if you're classified as a range one offender or not, it's a minimum twenty-five-year sentence." Trial counsel testified that Petitioner entered a nolo contendere plea that involved the dismissal of all other charges. He did not tell Petitioner that he would serve only seven years and then be released. Trial counsel testified that he reviewed the guilty plea agreement form with Petitioner, and they discussed the specific provisions of the agreement. Trial counsel testified that he had no reason to question Petitioner's competency to stand trial after he received the first mental health evaluation. He said that Petitioner was able to understand their discussions and to ask questions. Trial counsel testified that Petitioner never did anything that caused him to feel the need to request another mental health evaluation.

Trial counsel testified that Petitioner was sometimes not cooperative in meeting with him and with keeping appointments. On one occasion he sought an order from the court to require Petitioner to meet with him. Trial counsel denied telling Petitioner that he faced a sentence of twenty-five years to life or that Petitioner was unable to understand the charges against him. He also denied telling Petitioner that the minimum sentence Petitioner could get at trial was twelve years. Concerning inconsistencies in the victims' statements, trial counsel testified: "The two girls' testimony, I thought, was spot on with [corroborating] each other's testimony. We never had a preliminary hearing. We never had any actual testimony presented in Court so I am not exactly certain of which inconsistencies he is discussing." Trial counsel agreed that based on his experience it was not unusual for a child victim to initially deny that something happened.

Trial counsel testified that it was his opinion that the State's evidence against Petitioner would have resulted in a conviction. He said that he did not force Petitioner to plead guilty, and Petitioner insisted on a nolo contendere plea. During the plea submission hearing, Petitioner told the trial court that he was satisfied with trial counsel's representation. Petitioner also acknowledged to the trial court that trial counsel had "investigated the facts, researched the law to the point" that they could either be prepared to go to trial or recommend that Petitioner plead guilty. Trial counsel "absolutely" thought it was in Petitioner's best interest to enter into the plea agreement. There was nothing about the plea that was unconstitutional.

On redirect examination, trial counsel testified that he and Petitioner discussed the Rape Shield Law. He said:

> I haven't practiced criminal law in slightly less than three years but I'm trying to remember. It would prohibit evidence coming in concerning previous allegations the victims may have made against someone else trying to impeach the witness - - the victim's testimony unless there's allegations of , I can't remember exactly, I think it's transmission of sexual disease or those kind of issues. The - - the - - only thing [Petitioner] ever raised to me was I could never get a defense out of him and what our defense would be at trial if we had a trial. We never had a defense strategy except for, the girls are lying because I made them clean their room.

*Analysis*

Petitioner argues that his guilty plea was not knowing and voluntary because of trial counsel's failure to adequately meet with him; failure to investigate Matthew Kempher as a possible perpetrator of the offenses; failure to review the victim's statements with him; and failure to properly advise him concerning the rape shield law. We disagree.

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. T.C.A. § 40-30-103; *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). In an appeal of a court's decision resolving a petition for post-conviction relief, the court's findings of fact "will not be disturbed unless the evidence contained in the record preponderates against them." *Frazier v. State*, 303 S.W.3d 674, 679 (Tenn. 2010).

A criminal petitioner has a right to "reasonably effective" assistance of counsel under both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to effective assistance of counsel is inherent in these provisions. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger*, 279 S.W.3d at 293. To prove ineffective assistance of counsel, a petitioner must prove both deficient performance and

prejudice to the defense. *Strickland*, 466 U.S. at 687. Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) ). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

Additionally, we note that in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *see also Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. *See State v. Mackey*, 553 S.W.2d 337, 341 (Tenn. 1977), *superseded on other grounds by rule as stated in State v. Wilson*, 31 S.W.3d 189, 193 (Tenn. 2000); Tenn. R. Crim. P. 11(c). In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

At the conclusion of the post-conviction hearing, the post-conviction court made the following findings:

> After a review of the documents that have been filed, the pleadings as a whole, and considering the testimony here today, the Court is going to find that there had been no showing of ineffective assistance of counsel.
>
> The credibility issues concerning [Petitioner's] version of what occurred - - I won't say lacked - - it wasn't necessarily incredible, but it lacked clarity, and [Petitioner] had the burden of establishing what [trial counsel] did or did not do. [Trial counsel] was very clear in his explanation of what was done in preparation for the plea or trial, whichever this may have developed, a direct denial of certain accusations made within the pleading. I - - I do - - I suppose I, in effect, have not agreed with the State but in - - by allowing this proceeding to - - to go forward with the inadequate pleadings, I do agree that these pleadings are highly inadequate for purposes of going forward on an ineffective assistance of counsel claim and post-conviction relief proceedings.
>
> These - - that - - that statute is very specific about how these pleadings are to be filed. The biographical and the statistical information is due, and the specific areas of ineffective performance must be better fleshed out. However, I have permitted [Petitioner] to proceed through these proceedings as - - as filed, but I do find that the testimony offered by [Petitioner] and his mother are lacking for purposes of establishing ineffective assistance of counsel. [Trial counsel's] explanation and his rendition of what occurred is much more credible and likely than that offered by the petitioner and his mother.
>
> So, the petitioner has failed to establish either prong. The first prong being that there was ineffective assistance of counsel and that pretermits [sic] the Court's analysis of round - - of - - of the second part of the <u>Strickland</u> standard. So I find that the petitioner has failed to show ineffective assistance of counsel and this petition will be dismissed.

Initially, the State argues that this Court should strike Petitioner's brief because it does not include a Statement of the Issues as required by Rule 27 of the Tennessee Rules of Appellate Procedure. The State argues that Petitioner's apparent oversight to state the issues on appeal "does not comport with the Rules of Appellate Procedure because it entirely lacks a statement of the issues to narrow and focus the issues for this Court's consideration." We are well able to discern the issues raised by Petitioner notwithstanding his failure to formally submit the statement of the issues, by reading the

- 9 -

rest of Petitioner's brief. We sympathize with the State for its difficulty in discerning the issues raised by Petitioner due to Petitioner's oversight, but will waive Petitioner's transgression and not strike his brief.

Additionally, the State argues that Petitioner's claims of ineffective assistance of counsel are waived because they were not raised in his pro se or amended petitions for post-conviction relief and that they are raised for the first time on appeal. Although we agree that these grounds were not raised in the pro se or amended post-conviction petitions, our reading of the transcript of the post-conviction hearing indicates that all of the issues but one were presented at the evidentiary hearing. The only issue not presented was that trial counsel failed to review the victims' statements with Petitioner. As to all other issues raised on appeal, we will address them on the merits.

First, Petitioner argues that that trial counsel was ineffective for failing to spend sufficient time reviewing discovery with him, "not doing a full investigation and discussing meaningful strategies for [Petitioner] to defend himself." Concerning this claim, post-conviction counsel argued that "there [were] recordings, DVDs, and that there's also a hearing in [j]uvenile [c]ourt that could provide some inconsistencies to the statements that was in the transcripts. Those were never reviewed with my client." He further noted that most of the consultations with trial counsel lasted for fifteen to twenty minutes to sometimes thirty minutes, which was not enough time to review the voluminous discovery with Petitioner.

Trial counsel testified that the discovery in Petitioner's case was voluminous and consisted of paperwork, a number of CDs containing interviews with the victims, and written statements from the DCS workers concerning the forensic evaluations and allegations the victims had disclosed to them. He was also aware of some juvenile court proceedings. Trial counsel thought that he and Petitioner reviewed the CDs at trial counsel's office, and they discussed the allegations made by the victims. He asked Petitioner if there was some reason for the allegations made by the victims, and Petitioner told him that he made the victims clean their rooms. Although Petitioner complains about the amount of time that trial counsel met him, trial counsel testified that Petitioner was sometimes not cooperative in meeting with him and keeping appointments. At one point, trial counsel had to obtain an order from the trial court requiring Petitioner to meet with him. Petitioner himself admitted that he met with trial counsel, and they reviewed a report that contained several DCS reports and medical reports. Petitioner also said that he and trial counsel reviewed "forensic medical paperwork" one time. Petitioner's mother also testified that she and Petitioner met with trial counsel five or six times for approximately thirty minutes each time. She agreed that trial counsel showed them "the paperwork and what the paperwork said and everything said." Petitioner's mother further testified that the paperwork consisted of "what DCS had spoke to the children about the forensic exams and stuff, and the kids' statements."

Petitioner has not proven this claim by clear and convincing evidence nor has he shown any prejudice by counsel's performance in this area. The record shows that trial counsel met with Petitioner and reviewed discovery with him. The record further shows that Petitioner contributed to a lack of time spent with counsel by not showing up for some of their meetings. Although Petitioner indicates that trial counsel did not spend enough time with him during their meetings, he does not allege how this affected his case or his decision to plead nolo contendere. Petitioner is not entitled to relief on this ground.

Next, Petitioner contends that trial counsel failed to investigate "another possible perpetrator, Matt Kempher." At the post-conviction hearing, post-conviction counsel argued that trial counsel "testified that he did not seek - - did not investigate Matt Kempher who the Riches, in their interviews, had told them could be a possible other perpetrator. He had just dismissed that outright, that lead outright, and didn't investigate it any further." This court has held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This also applies to evidence to support the allegation that Mr. Kempher was the perpetrator. In *Black*, this court stated:

> As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness. In short, if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*.

*Id*.

Neither this court nor the post-conviction court may speculate on "what a witness's testimony might have been if introduced by a defense counsel." *Id*. Because

Petitioner did not present Matt Kempher or any other witness at the post-conviction hearing to show that Mr. Kempher was the real perpetrator, he has failed to show that trial counsel was ineffective as to the ground. *See Gant v. State*, No. M2015-01566-CCA-R3-PC, 2016 WL 3209457, at *5-6 (Tenn. Crim. App. June 1, 2016)("Because the Petitioner did not present "Clint" or any other witnesses showing that "Clint" was the perpetrator in this case, he has failed to show that trial counsel was ineffective as to this issue."). We further note that trial counsel testified that Petitioner never mentioned Mr. Kempher as a possible perpetrator of the offenses. As pointed out by the State, the post-conviction court specifically stated that it found that "[trial counsel's] explanation and his rendition of what occurred is much more credible and likely than that offered by the petitioner and his mother." Petitioner is not entitled to relief on this ground.

Third, Petitioner argues that trial counsel failed to review the victims' statements with him. However, this issue was not raised in the pro se post-conviction petition or the amended petition. It also does not appear that post-conviction counsel argued this issue at the post-conviction hearing. Therefore, as indicated above, the issue is waived. *See Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005)("Issues not addressed in the post-conviction court will generally not be addressed on appeal."); *see also Cauthern v. State*, 145 S.W.3d 571, 599 Tenn. Crim. App. 2004)("[A]n issue raised for the first time on appeal is waived.").

Finally, Petitioner contends that he was "unable to enter a knowing plea because [trial counsel] improperly advised him how the rape shield law would apply to his case." At the post-conviction hearing, post-conviction counsel argued that trial counsel "briefly stated it with a single exception with a STD but didn't mention using the inconsistent statements of the prosecution opening the door, whether there's other identifying markers, and that - - and that could be used in this case with Matt Kempher." Trial counsel further argued that if there was other evidence that Mr. Kempher was the perpetrator, "well then we could pierce the rape shield law."

Concerning this ground, trial counsel testified that he and Petitioner discussed the Rape Shield Law. He said he had not practiced law in "slightly less than three years" and was "trying to remember." Concerning his recollection of the rape shield law, trial counsel testified:

> It would prohibit evidence coming in concerning previous allegations the victims may have made against someone else trying to impeach the witness - - the victim's testimony unless there's allegations of , I can't remember exactly, I think it's transmission of sexual disease or those kind of issues. The - - the - - only thing [Petitioner] ever raised to me was I could never get a defense out of him and what our defense would be at trial if we had a trial. We never had a defense strategy except for, the girls are lying because I made them clean their room.

- 12 -

Petitioner has not proven this claim by clear and convincing evidence. Trial counsel could not specifically recall what he told Petitioner about the rape shield law. Moreover, it does not appear from the record that Petitioner ever revealed any information that would have triggered an exception to the rape shield law. Trial counsel also specifically testified that Petitioner never told him that Mr. Kempher or anyone else was a possible perpetrator. Concerning this issue, Petitioner's own testimony does not support his claim. When asked what trial counsel told him about the rape shield law, Petitioner testified:

> He said that under the rape shield law that even though we had testimony and testimony where there - - other people had been accused by the - - by the victims and it was proved faulty and even though they described this and that, I - - it was a long time ago, but for the majority of it, I seriously remember that he said that a lot of times that under Rule 4.02 or 4.12 or something like that, that things would not be permiss - - permissible.

Additionally, as pointed out by the State, Petitioner has not demonstrated any prejudice because Petitioner has not alleged that he would have insisted on proceeding to trial but for trial counsel's advice concerning this issue. Also, Petitioner submitted no independent evidence of prejudice, for instance, evidence that would not have been excluded at a trial pursuant to the rape shield law. Petitioner is not entitled to relief on this ground.

The record shows that Petitioner entered his nolo contendere plea knowingly and voluntarily with the effective assistance of counsel. At the plea submission hearing, Petitioner told the trial court that he had a GED and could read and write. He also said that he was not under the influence of any alcohol, drugs, or medications, and no one had forced, threatened, or promised him anything to plead guilty. Petitioner also acknowledged to the trial court that he was satisfied with the work of trial counsel, and he was satisfied that trial counsel had "investigated the facts and researched the law to the point that he or she would be ready for trial if called upon to do this [.]" Petitioner also told the trial court that he understood his sentence. At the post-conviction hearing, Petitioner acknowledged that he could have received a longer sentence if convicted at trial. The post-conviction court properly denied relief in this case.

## CONCLUSION

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

- 13 -